**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 10-4786

———————

NIGEL DWAYNE PARMS,
                                        Appellant

v.

RAYMOND J. SOBINA;
THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA;
THE DISTRICT ATTORNEY OF THE COUNTY OF ALLEGHENY

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. Civil No. 10-cv-00987)
District Judge:  Honorable Robert C. Mitchell

———————

Submitted Under Third Circuit LAR 34.1(a)
July 10, 2012

———————

Before: RENDELL, SMITH and BARRY, <u>Circuit Judges</u>

(Opinion Filed:  July 17, 2012)

———————

OPINION

———————

BARRY, <u>Circuit Judge</u>

    Petitioner Nigel Parms ("Parms"), an inmate in a Pennsylvania state prison, is

currently serving a five to fifteen year sentence of imprisonment, to be followed by ten

years of probation, for his conviction on charges of attempted rape and aggravated indecent assault of a five-year-old girl. He petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging ineffective assistance of counsel at trial. The District Court found his claim to be without merit and denied his request for relief. We will affirm.

## I. Background

### A. Underlying Facts

On the afternoon of July 1, 1997, Parms was drinking beer in the apartment of Mia Lewis ("Lewis), who was his brother's girlfriend. At some point during that afternoon, a five-year-old girl who lived next door to Lewis, came into the apartment looking for Lewis's children, who were her playmates. While in the apartment, the girl encountered Parms, who took her into a bathroom, removed her clothes, spread a lubricant onto her vagina, and attempted to have sex with her. That evening, the girl reported to her mother that Parms "did sexes on me." After examining her daughter and discovering a greasy substance on her vagina, the mother called the police.

In the early morning hours of July 2, 1997, law enforcement officers arrested Parms in Lewis's apartment after finding him hiding behind a door. Parms, who is deaf, was taken to a police station where a certified interpreter was waiting. After waiving his *Miranda* rights, Parms provided a statement to police in which he confessed to assaulting the girl. The statement, which was written down by an officer and signed by Parms, is extraordinarily graphic, and so we do not quote it here in full:

I went into the bathroom. The girl was already in there. I got the cream and

2

touched her vagina. Then I put my penis on top of her vagina and I ejaculated on her . . . I gave her some toilet paper to clean up. I don't know the girl's name but she is five years old. This happened this evening at Mia Lewis' apartment in Braddock. I used the cream that was in a red jar.

(J.A. at 147.)

## B. Suppression Hearing, Trial, & Sentencing

On March 30, 1998, Parms appeared in the Court of Common Pleas of Allegheny County to face charges of rape, aggravated indecent assault, and corruption of a minor under 18 Pa. Cons. Stat. Ann. §§ 3121, 3125, and 6301. Parms, who had by then disavowed his confession, moved to suppress his post-arrest statement on the ground that it had been coerced.[1] Following a hearing at which both Parms and the arresting officer testified, the motion was denied. Parms then elected to waive his right to a jury trial and immediately proceed with a bench trial.

At the one-day bench trial, the prosecution first called the girl, who testified that Parms "did sexes on me." Specifically, she testified that Parms "put my clothes off," "[t]ouched my privates," and "put some grease on me." (*Id.* at 131, 123-25.) She stated that he then "pulled his pants down" and "put [his] private on my private," and that "[i]t was hurting" when he did so. (*Id.* at 125, 135, 138.) The prosecution also called

---

[1] At the suppression hearing, Parms testified that he initially denied any sexual contact with the girl and only decided to admit his involvement after the police "put a lot of pressure on me." (J.A. at 101.) Specifically, he asserted that the police "asked me the same questions over and over and over again" and that the repeated questioning "made me tired and I felt I had to sign [the statement] . . . to make them stop asking me questions over and over again." (*Id.* at 107-08.) We note that the police began questioning Parms

Detective Dennis Ostrowski, who testified that after receiving a report of the assault, he went to Lewis's apartment, found Parms hiding behind a door, and placed him under arrest. He explained that although Parms initially denied any wrongdoing, he soon confessed to the assault. Finally, Parms himself testified. Although he professed his innocence of the charges, he acknowledged being in the bathroom with the girl and admitted that "something happen[ed] inside the bathroom." (*Id.* at 170.) He claimed, however, that the entire episode had been "an accident." (*Id.* at 106-07.) Specifically, he testified that he had been masturbating in the bathroom with the assistance of some oil when the girl unexpectedly walked in:

> And I had my eyes closed and . . . [the girl] walked in and I felt her brush me; so I put my hands out and wait -- wait. Excuse me. She had her hands out and oil got on her, like and I said, what are you doing here? So I stood up to leave and I left; and she went . . . to go to the bathroom. So I just saw her, like, for a minute.

(*Id.* at 171.)

Parms was found not guilty of rape, but guilty of attempted rape, aggravated indecent assault, and corruption of minors. At the subsequent sentencing hearing, he was sentenced to five to fifteen years' imprisonment to be followed by ten years' probation. On direct appeal, the Pennsylvania Superior Court affirmed the judgment of sentence, and the Supreme Court of Pennsylvania denied his Petition for Allowance of Appeal.

---

at 1:52 a.m. and that Parms signed the confession less than one hour later, at approximately 2:40 a.m. (*Id.* at 81, 108.)

4

## C. Post-Conviction Proceedings

On April 29, 2002, Parms filed a *pro se* petition for relief under the Pennsylvania Post-Conviction Relief Act ("PCRA"). Counsel was appointed and entered an appearance on Parms' behalf, but no action was taken on his petition. On April 29, 2004, Parms filed another *pro se* PCRA petition and requested new counsel, claiming that his attorney had abandoned him. Again, no action took place, and on August 4, 2008, Parms filed yet another *pro se* PCRA petition, and again, nothing happened. On July 29, 2010, after more than eight years of inaction on his state PCRA petitions, Parms filed a *pro se* petition for writ of habeas corpus in the Western District of Pennsylvania.

Following the filing of this federal habeas petition, the PCRA court appointed new counsel to represent Parms and the Commonwealth filed an answer to his last PCRA petition. Meanwhile, the Commonwealth argued to the District Court that because Parms had not exhausted his state court remedies, any review of the habeas petition should "be stayed until the state court is able to fully review the merits of [Parms'] PCRA petition." (J.A. at 7.) On December 6, 2010, the District Court determined that the exhaustion requirement should be excused in light of the almost nine-year delay in adjudicating Parms' PCRA petition and the fact that Parms had been jailed for over thirteen years and was "rapidly approaching his maximum sentence expiration date." (*Id.*) Accordingly, it

5

proceeded to reach the merits of Parms' petition.[2]

Parms' habeas petition raised eight separate claims. Seven of these claims charged ineffective assistance on the part of Parms' trial counsel for his alleged failure to investigate, develop, or pursue certain issues during trial.[3] The District Court dismissed Parms' habeas petition, describing his ineffective assistance claims as "patently frivolous" and declining to issue a certificate of appealability ("COA"). (*Id.* at 13.) Parms timely appealed, and on March 10, 2011, we issued a COA on his claim that trial counsel "rendered ineffective assistance by failing to address at trial evidentiary inconsistencies regarding: (1) the order in which appellant and the victim entered the bathroom; (2) the color of the jar from which appellant took the grease; and (3) the state of the victim's clothing." (*Id.* at 15.) The application for a COA was denied as to all other claims.[4]

---

[2] The Commonwealth has not raised an exhaustion argument before us. We note that Parms' PCRA petition was denied on September 15, 2011, and a timely appeal to the Pennsylvania Superior Court remains pending.

[3] Parms' eighth claim related to the "inordinate delay in the state courts in disposing of his [PCRA] petitions," (J.A. at 9), which the District Court addressed by waiving the exhaustion requirement.

[4] Although we specifically denied the request for a COA on the remaining claims, Parms revisits several of them in his brief on appeal. (*See, e.g.*, Appellant's Br. at 17 [trial counsel was ineffective for failing to emphasize the short period of time that the girl was present in Lewis's apartment]; *id.* at 19 [trial counsel was ineffective for failing to investigate conflicting lab reports on physical evidence of sexual assault].) While we may, in our discretion, *sua sponte* "expand the scope of the COA beyond the scope announced by the motions panel," *Villot v. Varner*, 373 F.3d 327, 337 n.13 (3d Cir. 2004), it is well-established that we need not consider arguments that are "not within the scope of the issue on which we granted a certificate of appealability." *Miller v. Dragovich*, 311 F.3d 574, 577 (3d Cir. 2002). Here, where both the District Court and the motions panel

6

## II. Discussion[5]

Because the District Court did not conduct an evidentiary hearing, we exercise plenary review over its dismissal of Parms' petition. *Williams v. Beard*, 637 F.3d 195, 203-04 (3d Cir. 2011). In evaluating a claim of ineffective assistance of counsel, we apply the familiar two-prong test established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a defendant must show: (1) "that counsel's performance was deficient"; and (2) "that the deficient performance prejudiced the defense." *Id.* at 687. This is a demanding standard. To demonstrate deficient performance, a defendant must show that counsel's representation "fell below an objective standard of reasonableness." *Outten v. Kearney*, 464 F.3d 401, 414 (3d Cir. 2006). As for the prejudice prong, the defendant must demonstrate "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Strickland*, 466 U.S. at 694).

We granted a COA on three specific allegations of ineffective assistance, and will address each in turn. None of these allegations has merit.

### A.

Parms first claims that his trial counsel "rendered ineffective assistance by failing to address . . . evidentiary inconsistencies regarding . . . the order in which appellant and

have already considered and rejected Parms' request for a COA on these other claims, we decline to *sua sponte* expand the scope of the COA.

[5] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 2241 and 2254. We have appellate jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253.

the victim entered the bathroom." (J.A. at 15.) This claim is grounded in the cross-examination of the girl at trial, during which defense counsel pressed her on the details of her encounter with Parms, including questioning her closely on whether she or Parms had entered the bathroom first. We excerpt that exchange in full:

Q: What was he doing when you went back there to the bathroom?

A: He told me to come here and he came in the bathroom and put my own clothes off.

Q. Wait a minute now. Are you saying that you went to the bathroom first or that you walked -- are you saying you walked back there with Nigel?

A: No. I went in the bathroom.

Q: You walked into the bathroom?

A: Yeah.

Q: And was Nigel in the bathroom when you walked into the bathroom? Did you see Nigel was in the bathroom when you walked in?

A: He came in and I came in.

Q: So he went in first and then you went in after him; is that right?

A: Yeah.

Q: Okay. Did you walk right behind him or was he in the bathroom and then you walked in after him? Do you understand what I'm saying?

A: Yeah.

Q: Were you right behind him or was he already in the bathroom?

A: He was already -- he was in there.

8

(*Id.* at 130-31.)

Parms characterizes this testimony as "vacillat[ing] about the sequence of events," and he asserts that his trial counsel was ineffective because he "never challenged [the girl] on any of the inconsistencies in her testimony." (Appellant's Br. at 17.) This argument fails under both *Strickland* prongs. First, trial counsel's performance was not deficient because, as the above transcript clearly shows, he *did* challenge the girl on supposed inconsistencies in her testimony. Second, even if the failure to further cross-examine her on the question of who entered the bathroom first amounted to ineffective assistance, Parms cannot establish prejudice. Parms admits to being in the bathroom alone with her, and so it is difficult to see how the question of who entered first is even relevant. In any event, given the strength of the evidence against Parms—including his signed confession—and the preposterous exculpatory story he presented at trial, there is no reasonable probability that he would have been acquitted if defense counsel had further pursued this issue on cross-examination.

## B.

Parms next claims that trial counsel was ineffective for failing to address the inconsistency as to the color of the jar from which he took the lubricant used in the assault. In his confession, Parms stated that he used cream from a red jar. At trial, however, Detective Ostrowski testified that he seized four different creams or lotions from Lewis's apartment and that Parms identified a black jar when these items were

9

shown to him at the police station.  Parms asserts that his trial counsel's failure to emphasize this inconsistency amounted to ineffective assistance because this discrepancy "makes the details of his confession unreliable."  (Appellant's Br. at 19.)  Parms is wrong. The inconsistency as to the color of the jar is entirely immaterial to the charged crime given that there is no dispute that Parms used a lubricant on the afternoon in question.

C.

The third example of purported ineffective assistance is that trial counsel failed to address "evidentiary inconsistencies regarding . . . the state of the victim's clothing." (J.A. at 15.)  This argument stems from the girl's testimony, under cross-examination, that she "ke[pt her] panties on" during her encounter with Parms.  (*Id.* at 134.)  On redirect, however, the prosecutor revisited the issue:

Q:  How did he put the grease on your private part if your panties were on?

A:  He put my panties down to my, to my legs so he put them, put the grease on.

Q:  Okay.  How far down did he pull your panties?  Do you remember?

A:  Down here.  (Pointing.)

Q:  Okay.  Let me see where you are pointing to.

    THE COURT: Low to mid thigh.

Q: Okay.  Is that where your panties were when he put his private on your private?

A:  Yeah.

(*Id.* at 137-38.)  Parms argued to the District Court that "counsel was ineffective for

10

fail[ing] to address" this supposedly inconsistent testimony. (*Id.* at 26.) He has abandoned this argument on appeal, and we deem it waived. *See Ghana v. Holland*, 226 F.3d at 175, 180 (3d Cir. 2000).

### III. Conclusion

For the foregoing reasons, we will affirm the District Court's dismissal of Parms' habeas petition.